UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LARHONDA OLIVER, | ) | No.  CV 04-7682-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On September 15, 2004, LaRhonda Oliver ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for Supplemental Security Income benefits. On October 27, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on March 30, 2005, defendant filed an Answer to Complaint.  On June 3, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On January 30, 2002, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 47-49). Plaintiff alleged that, beginning on December 20, 2001, she was unable to work because of the following impairments: arthritis, bipolar disorder, insomnia, and stress. (AR at 35, 47). The Commissioner made an initial determination, denying plaintiff's application for benefits. (AR at 35-38).

On July 9, 2002, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 39). On June 3, 2003, the ALJ conducted a hearing in Long Beach, California. (AR at 238-60). Plaintiff appeared at the hearing with her counsel, and testified. (AR at 241-52). Vocational expert, Alex Aloia, and plaintiff's mother, Patricia Oliver, also testified. (AR at 253-56, 257-60).

On June 25, 2003, the ALJ issued his decision denying benefits. (AR at 20-25). In his decision, the ALJ concluded that plaintiff suffered from the following impairments: history of obesity, status post stapling surgery, and depression. (AR at 21, 24). According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 24). The ALJ determined that plaintiff retained the residual functional capacity to perform light exertion with occasional crouching, kneeling, crawling, and climbing and that she was moderately limited in her ability to do complex work and to interact appropriately with the general public. (AR at 21-22, 23-24). Ultimately, the ALJ concluded that plaintiff could perform her past relevant work as a packager and was not disabled pursuant to the Social Security Act. (AR at 24-25).

On July 18, 2003, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 12). The Appeals Council subsequently affirmed the ALJ's decision. (AR at 5-8).

**PLAINTIFF'S CONTENTIONS**

1. The ALJ failed to properly evaluate plaintiff's mental impairments.

2. The ALJ failed to properly evaluate plaintiff's residual functional capacity.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

**DISCUSSION**

**A.   Whether the ALJ Properly Evaluated Plaintiff's Mental Impairments**

Plaintiff claims that the ALJ failed to properly evaluate her mental impairments. First, plaintiff contends that the ALJ improperly dismissed the opinion of her treating physician, Ernesto Nativdad, M.D. Second, plaintiff faults the ALJ for rejecting her testimony due to alleged inconsistent statements and her failure to follow a treatment course. For the reasons stated below, the Court finds that the ALJ erred in making his determination.

**1.   Rejection of Dr. Natividad's Opinion**

On May 28, 2002, Dr. Natividad completed a Mental Disorder Questionnaire, opining that plaintiff is "unable to maintain employment due to severe mood swings, excessive absenteeism, paranoia, suicidal ideation, depression & anxiety. She has extremely poor memory and poor concentration." (AR at 183-87). On the questionnaire, Dr. Natividad, indicated that he last examined plaintiff on July 11, 2001. (AR at 187). The ALJ gave no weight to Dr. Nativdad's evaluation because Dr. Natividad last examined plaintiff approximately five months prior to her alleged onset date of December 20, 2001. (AR at 23). Furthermore, the ALJ noted that Dr. Nativdad's assessment was not supported by psychological testing, a record of psychotherapy, or a history of psychiatric treatment decompensation, such as suicide attempts, suicide ideation, hallucinations, delusions, panic attacks, or significant difficulty in social interaction. (Id.).

On June 20, 2002, Robert T. Ferrell, M.D., a State Agency physician, completed a Mental Residual Functional Capacity Assessment and found plaintiff moderately limited in most categories of

4

evaluation. (AR at 202-03). He determined that plaintiff could sustain simple, repetitive tasks with adequate pace and persistence, and adapt and relate to co-workers and supervisors, but could not work with the public. (AR at 204). Dr. Ferrell further determined that plaintiff exhibited mild restriction of activities of daily living; moderate difficulties in maintaining social function; moderate difficulties in maintaining concentration, persistence, or pace; and no limitations with regard to episodes of decompression. (AR at 198). The ALJ rejected Dr. Ferrell's opinion on the grounds that he did not examine plaintiff, it was unclear what information the physician based his assessment on, and the limitations that he assessed were likely based on Dr. Natividad's assessment, which the ALJ rejected as unsupported by clinical evidence. (AR at 23).

In a report dated May 7, 2002, Barry Edelman, M.D., completed a Complete Psychiatric Evaluation on plaintiff, diagnosing plaintiff with post-traumatic stress disorder, depressive disorder, and cocaine and alcohol abuse, in remission. (AR at 167-72). Dr. Edelman assessed plaintiff with a GAF score of 60 and opined that plaintiff was able to understand, remember, and follow simple instructions, but would have difficulty with complex instructions. (AR at 171). Dr. Edelman further opined that plaintiff could maintain concentration for simple work, maintain adequate pace doing simple work, and interact sufficiently with peers, the public, and supervisors. (Id.). Ultimately, the ALJ relied on the opinion of Dr. Edelman in reaching his decision that plaintiff is not disabled. An ALJ should place greater weight on a treating physician's opinion than that of an examining and non-examining physician. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)("It is clear that more weight is given

to a treating physician's opinion than to the opinion of a non-treating physician because a treating physician 'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'")(quoting Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Andrews, 53 F.2d at 1041. The proper weight that an ALJ should place on a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record. See 20 C.F.R. §§ 404.1527, 416.927.

Moreover, an ALJ may disregard a treating physician's opinion whether or not other medical evidence contradicts that opinion. See Andrews, 53 F.3d at 1041. However, before rejecting a treating physician's uncontroverted opinion, the ALJ must present clear and convincing reasons for doing so. See Andrews, 53 F.3d at 1041; see also Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601 (9th Cir. 1984). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chater, 94 F.3d 520 (9th Cir. 1996). "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion may itself be substantial evidence; it is then solely the province of the ALJ to resolve the

conflict." Andrews, 53 F.3d at 1041.

In this case, the ALJ disregarded Dr. Natividad's opinion in its entirety because he made the assessment on July 11, 2001, less than one month after his first evaluation and only five months prior to plaintiff's alleged onset date. The ALJ similarly rejected the State Agency physician's June 20, 2002 assessment of moderate mental limitations on the ground that the physician relied on the assessment of Dr. Natividad. Plaintiff, however, contends that Dr. Natividad oversaw plaintiff's treatment at the Long Beach Department of Mental Health with social worker, Terri Soblosky, M.S.W., even if he did not personally examine her. (AR at 105, 183, 225, 229). As such, plaintiff claims that Dr. Natividad continued to monitor and oversee plaintiff's treatment and should be considered a treating physician capable of rendering a disability assessment. See Benton v. Barnhart, 331 F.3d. 1030, 1038 (9th Cir. 2003)(patterns of medical treatment that make a psychiatrist responsible for prescribing and monitoring medication allow the psychiatrist to be a treating source).

Upon review of the records, however, the treatment records from Long Beach Mental Health do not show that Dr. Natividad monitored, supervised, or oversaw plaintiff's treatment from July 11, 2001 to May 28, 2002, the date Dr. Natividad completed the questionnaire. (AR at 187). Although it appears that Dr. Natividad signed the Evaluation by Physician dated June 19, 2001 (AR at 230) and prepared the medication log entries on June 19, 2001, May 23, 2002, July 17, 2002, October 4, 2002, and March 26, 2003 (AR at 233-35), there is nothing in the medical records to support plaintiff's claim that Dr. Natividad continued to examine plaintiff between the onset date of December 20, 2001 and the day he completed the questionnaire.

7

Plaintiff argues that while Dr. Natividad did not personally examine plaintiff, he continued to monitor and oversee plaintiff's treatment through her social worker. Plaintiff specifically points to the progress notes completed by Ms. Sablosky that refer to Dr. Natividad dated November 25, 2002 and December 3, 2002. But these notations merely reference a verification and a letter written by Dr. Natividad and the scheduling of an appointment on March 26, 2003. (AR at 225, 229). Moreover, Ms. Sablosky's progress notes are limited to the period November 25, 2002 to March 4, 2003. (AR at 225-229). Thus, Ms. Sablosky's treatment notes did not cover the time period at issue, which is July 11, 2001 to May 28, 2002.

Plaintiff also relies on Benton v. Barnhart in support of her claim that Dr. Natividad was a treating physician. Even if Dr. Natividad played a role in monitoring and overseeing plaintiff's treatment, Benton does not apply to plaintiff's claim. In Benton, the issue that arose was whether the treating physician qualified as a treating physician because he only examined the claimant once. Benton, 331 F.3d. at 1038. Here, the ALJ recognized Dr. Natividad as plaintiff's treating physician. (AR at 23). The issue involved whether Dr. Natividad's pre-onset date assessment should be rejected by the ALJ. A pre-onset date opinion has no relevance to plaintiff's claim of disability. And plaintiff bears the burden of submitting evidence in support of her claim. Plaintiff, therefore, should have submitted an opinion from Dr. Natividad outlining the parameters of his treatment of plaintiff after December 20, 2001, the onset date. 20 C.F.R. § 404.1512(c). She failed to do so. As such, the ALJ properly disregarded Dr. Natividad's opinion.

The ALJ also rejected Dr. Natividad's opinion because it was not

8

supported by psychological testing, a record of psychotherapy, a history of psychotropic medication management, a history of psychiatric treatment, or a history of decompensation, such as suicide attempts, suicide ideation, hallucinations, delusions, panic attacks, or significant difficulty in social interaction. (AR at 23). Dr. Natividad's Mental Disorder Questionnaire Form lacks supporting clinical findings and appears to be based primarily on his observations of plaintiff and her subjective complaints. (AR at 183-87). While such information may be contained in Dr. Natividad's written notes, his evaluation and medication logs are illegible. (AR at 230, 233-35). Thus, while the source of Dr. Nativdad's clinical findings are unclear, the Court rejects his opinion on the grounds that he made his assessment prior to the alleged onset date.

The ALJ also disregarded the State Agency physician's June 20, 2002 assessment of moderate limitations on the grounds that the physician, Robert Ferrell, M.D., did not examine plaintiff, did not state what evidence he based his opinion on, and appears to have relied on Dr. Natividad's pre-onset date assessment. (AR at 23). First, Dr. Ferrell appeared to have significantly relied on Dr. Nativadad's rejected assessment. In his discussion of the evidence and issues, Dr. Ferrell cited extensively to Dr. Nativdad's Mental Disorder Questionnaire Form. (AR at 206). It is unclear what other clinical data, if any, Dr. Ferrell used to render his assessment. Other than Dr. Natividad's opinions from his May 28, 2002 assessment, Dr. Ferrell did not refer to any other objective evidence in his discussion of the evidence. (Id.). Having rejected the treating physician's opinion because it preceded the alleged onset date, the ALJ relied on Dr. Edelman's opinion over the opinion of Dr. Ferrell,

the State Agency physician. It is within the ALJ's province to do so. It is well-settled that an ALJ should afford less weight to a non-examining physician's opinion than to either an examining or treating physician's opinion. See Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("[T]he conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician."). Dr. Edelman's opinion was based on his clinical findings with regard to his examination of plaintiff's mental status. (AR at 170-71). Dr. Ferrell did not examine plaintiff; as such, his opinion was not based on independent clinical findings. Thus, the Court finds no error in the ALJ's decision to reject the opinions of Drs. Natividad and Ferrell in favor of Dr. Edelman.

**2. Rejection of Plaintiff's Testimony**

Plaintiff also objects to the ALJ's rejection of her testimony on the grounds that she made an inconsistent statement and did not follow treatment recommendations from her doctor.

**a. Inconsistent Statement**

Plaintiff challenges the ALJ's rejection of plaintiff's credibility based on an alleged inconsistent statement. The ALJ wrote, "Claimant's daily activities are inconsistent with her allegation. Prior to being laid off, claimant was she [sic] was very active; she was a single parent, worked full-time, took care of a disabled father and went to school in the evenings." (AR at 24). Plaintiff responds that she did not cease work activities because she was laid off; she was laid off as a result of her difficulties at work.

///

1  Internal conflicts in a claimant's statements or testimony
2 support a finding that the claimant lacks credibility. See Light v.
3 Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) (in
4 weighing claimant's credibility, ALJ may consider "inconsistencies
5 either in [plaintiff's] testimony or between his testimony and his
6 conduct"); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir.
7 1989) (ALJ can reject pain testimony based on contradictions in
8 plaintiff's testimony).

9  Here, plaintiff has consistently testified that she was laid off
10 from her previous employment as a receptionist due to her impairments.
11 In a Psychiatric Evaluation dated May 7, 2002, plaintiff reported to
12 Dr. Edelman that she was laid off for missing work due to her multiple
13 surgeries. (AR at 169). At the hearing, plaintiff testified that she
14 had difficulty handling the stress of the receptionist position
15 without special accommodations for her disabilities. (AR at 246).
16 Plaintiff explained, "And then I guess as I got sicker, they said –
17 after – the day before my surgery they laid me off." (Id.).
18 Plaintiff's Daily Activities Questionnaire, moreover, appears to be
19 consistent with the Daily Activities Questionnaire completed by her
20 mother, Patricia Oliver. (AR at 80-85, 86-91). Both questionnaires
21 indicate that plaintiff has difficulty and needs assistance with her
22 activities of daily living. (Id.). Although the ALJ suggests a
23 causal connection existed between plaintiff losing her job as a
24 receptionist and the onset of her alleged impairments, this conclusion
25 is not supported by the evidence in the record. Accordingly, the
26 Court finds that there was no inconsistency in plaintiff's statements
27 regarding her daily activities.
28 ///

### b. Failure to Follow Treatment Recommendations

Plaintiff also challenges the ALJ's contention that plaintiff initially was non-compliant with treatment, and when she did comply, her condition improved. (AR at 23). Plaintiff responds that she suffers from mental instability, which adversely affects her ability to follow a treatment course. (Joint Stipulation at 7). Furthermore, plaintiff contends that no treatment regimen exists that could cure her symptoms and enable her to work. (Id.).

An ALJ may cite a claimant's failure to follow a doctor's recommendation as a legitimate reason to discredit the claimant's testimony. See Fair v. Bowen, 885 F.2d at 603 (listing proper reasons to discredit claimant's testimony and stating, "Another such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"); see also Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)(ALJ may rely on claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); Bunnell, 947 F.2d 341, 346 (9th Cir. 1991)(identifying claimant's failure to seek medical treatment as proper reason to discredit claimant's testimony). But in order to do so, the ALJ must first determine that the plaintiff would have been able to return to work if the plaintiff had followed the prescribed treatment. 20 C.F.R. 404.1530(a)("In order to get benefits, you must follow treatment prescribed by your physician <u>if this treatment can restore your ability to work</u>.")(<u>emphasis added</u>).

///
///
///

Here, plaintiff reported to Dr. Natividad on or about November 6, 2001, that she preferred not to take medication because of her concern that she could develop an addiction and cause a relapse in her "seven years of success with sobriety." (AR at 105). Furthermore, Dr. Natividad reported that plaintiff was receiving individual counseling on a weekly basis. (Id.). Indeed, the record indicates that plaintiff admitted she had a history of consuming excessive amounts of alcohol and fifteen years of cocaine abuse, both of which ended around 1994. (AR at 168). She also reported being in drug and alcohol rehabilitation. (Id.). Given plaintiff's significant history of drug and alcohol abuse, plaintiff's fears of a relapse sufficiently explained why plaintiff initially rejected medication. The ALJ also noted that the treatment records indicated that plaintiff's condition improved when she took medication. (AR at 23). But the ALJ's decision referred to a progress note dated April 28, 2002, which stated, in part, "Depression – improved – continue Zoloft..." The record also contained a more recent progress note from the Memorial Family Medical Center dated March 7, 2003, which stated, "Anxiety/Depression – off meds, stable." (AR at 211, 222). These progress notes alone suggest that plaintiff's condition had stabilized. A more recent medication log from Long Beach Mental Health, dated March 25, 2003, however, reported that plaintiff's current medication included Depakote.[1] (AR at 233).

///

---

[1] Depakote is used to treat seizure disorders, certain psychiatric conditions (manic phase of bipolar disorder), and to prevent migraine headaches. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Depakote"; then follow "Depakote Oral" hyperlink).

13

Plaintiff testified at the June 3, 2003 hearing that she currently takes Zoloft.[2] Overall, given the inconsistent record regarding plaintiff's medication, substantial evidence does not support the ALJ's conclusion that plaintiff's mental impairments have stabilized to a point where she can hold a job. Furthermore, the single progress note, dated April 28, 2002, stating that plaintiff's condition had improved, does not provide sufficient grounds for rejecting plaintiff's contention that she still suffers from a mental impairment that limits her ability to work. Given the contradictory information regarding plaintiff's current medications and her credible explanations of why she did not initially take medication, the evidence does not support the ALJ's conclusion.

**B.     Remand is Required to Remedy the Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy the defects in the ALJ's decision, and where the record should be developed more fully. McAlister, 888 F.2d at 603; Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see

---

[2] Zoloft is used to treat depression, panic attacks, obsessive compulsive disorders, post-traumatic stress disorder, social anxiety disorder, and a severe form of premenstrual syndrome. http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Zoloft"; then follow "Zoloft Oral" hyperlink; then follow "Sertraline – Oral" hyperlink).

Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen, 80 F.3d at 1292.

Here, remand for further proceedings is appropriate to allow the ALJ an opportunity to evaluate plaintiff's testimony and credibility. Once he has done so, the ALJ can then determine whether plaintiff's mental impairments prevent her from performing her past relevant work. If so, the ALJ must then decide whether plaintiff retains the residual functional capacity to perform work that exists in significant numbers in both the local and national economies.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: November 17, 2005

                                                               /s/
                                       JENNIFER T. LUM
                                       UNITED STATES MAGISTRATE JUDGE